Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Scott Alan Burroughs (SBN 235718)
scott@donigerlawfirm.com
Kelsey M. Schultz (SBN 301494)
kschultz@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

KIM SEYBERT, INC., a New York
Corporation,

Plaintiff,

vs.

LE CROCHET BY SARO, INC.,
individually and doing business as "Saro
Trading Company," a California
Corporation; and DOES 1 through 10,

Defendants.

Case No.:

PLAINTIFF'S COMPLAINT FOR:
1. COPYRIGHT INFRINGEMENT;
2. VICARIOUS AND/OR
   CONTRIBUTORY COPYRIGHT
   INFRINGEMENT
3. FOR TRADE DRESS
   INFRINGEMENT, FALSE
   DESIGNATION OF ORIGIN,
   AND UNFAIR COMPETITION

Jury Trial Demanded

Kim Seybert, Inc., by and through its undersigned attorneys, hereby prays to this honorable Court for relief based on the following:

## JURISDICTION AND VENUE

1.    This action arises under the Copyright Act of 1976, Title 17 U.S.C., § 101 et seq.

2.    This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1338 (a).

- 1 -

COMPLAINT

3.      Venue in this judicial district is proper under 28 U.S.C. §§ 1391(c) and 1400(a) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

4.      This Court has personal jurisdiction over the Defendants because Defendants maintain a principal place of business within this District.

## PARTIES

5.      Plaintiff, KIM SEYBERT, INC. ("SEYBERT"), is a corporation organized and existing under the laws of the State of New York and operating in New York.

6.      Defendant LE CROCHET BY SARO, INC., individually and doing business as "Saro Trading Company" ("SARO"), is a California corporation with its principal place of business located at 3333 W. Pacific Avenue, Burbank, California 91505.

7.      Plaintiff is informed and believes and thereon alleges that Defendants DOES 1 through 10 (together with SARO, "Defendants"), are other parties not yet identified who have infringed Plaintiff's copyrights, have contributed to the infringement of Plaintiff's copyrights, or have engaged in one or more of the wrongful practices alleged herein. The true names, whether corporate, individual or otherwise, of Defendants 1 through 10, inclusive, are presently unknown to Plaintiff, which therefore sues said Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained.

8.      Plaintiff is informed and believes and thereon alleges that at all times relevant hereto, each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment; and actively participated in or subsequently ratified and/or

adopted each of the acts or conduct alleged, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each violation of Plaintiff's rights and the damages to Plaintiff proximately caused thereby.

## NATURE OF THE SUIT

9.      This case concerns the copyright infringement of Seybert's original design, which SARO infringed by reproducing, preparing, and distributing copies and/or derivative works of Seybert's copyright design without Seybert's knowledge, permission, or authorization. It also concerns trade dress infringement as Defendants at all relevant times represented themselves as an authorized seller of Seybert products and have used Seybert products with distinct trade dress in advertisements for Defendants pirated products and selling products which copy Seybert's trade dress. The instant suit seeks to correct SARO's wrongs.

## FACTUAL BACKGROUND

10.     Kim Seybert, owner of SEYBERT, is a luxury lifestyle designer who has dedicated her career to craft-based design, including her unique and celebrated line of luxury table décor consisting of placemats, table runners, tablecloths, napkins and napkin rings, in addition to other houseware products. For more than twenty (20) years, Seybert has enjoyed substantial success in the luxury table décor market offering houseware designs created by Kim Seybert and owned in exclusivity by Seybert. This broad diversity embodies Kim Seybert's versatility as an artist and designer who is comfortable working on private commissions, one-of-a-kind pieces for special collaborations, or pieces that are affordable to a wider audience.

11.     Seybert's original works are featured in popular and influential magazines and websites, including Vogue and Architectural Digest. Seybert's products are sold in hundreds of points of distribution, including, but not limited to, through Seybert's brick and mortar location; its website, https://kimseybert.com/; and

1  luxury stores Neiman Marcus, Bloomingdales, Geary's, Harrods, Saks Fifth Avenue,

2  and Bergdorf Goodman.

3       12.    Among the original designs created and owned by Seybert are the

4  following original designs entitled: (1) Confetti Placemat, (2) Vermicelli Placemat,

5  (3) Bow Tie Runner, (4) Flux Napkin Ring, (5) Super Nova Napkin Ring, (6) Pearl

6  Burst Napkin Ring, (7) Wood Spider Burst Napkin Ring, (8) Coral Branch Napkin

7  Ring, (9) Sea Stone Napkin Ring, (10) Pearl Napkin Ring, (11) Constellation Napkin

8  Ring, (12) Pearl Napkin Ring, (13) Coral Branch Napkin Ring. True and accurate

9  exemplar(s) of the Subject Designs and corresponding Copyright Registration

10  Numbers are set forth below.

11      13.    Prior to the acts complained of herein, Seybert marketed and sold the

12  Subject Designs through its authorized third-party distributors and direct to customers

13  through its website and store.

14      14.    Through extensive advertising, promotion, and publicity of the Subject

15  Designs, Seybert has obtained and holds a trade dress protection in the overall

16  appearance of the Subject Designs.

17      15.    The Subject Designs consist of primarily non-functional trade dress

18  elements, such as the color combinations used, the shapes and combination thereof,

19  the textures, the use of traditional beading, the specific combination of shapes within

20  each Subject Design, among other distinctive attributes. The specific non-functional

21  elements regarding each Subject Design are identified below in the comparison chart.

22      16.    The elements of Seybert's home décor are distinctive and each element

23  serves to identify Seybert as the source of the Subject Designs. Seybert has made

24  substantial sales in the United States of the Subject Designs trade dress. Seybert has

25  spent substantial money and resources to advertise, market, and promote Seybert

26  trade dress online through media in the United States. As a result of continued and

27  widespread commercial use and success, as well as advertising, publicity, and

28

- 4 -

COMPLAINT

promotion, the consuming public has come to recognize the Seybert trade dress, which is shown in the Subject Designs, and is nonfunctional and distinctive, and to associate it with a single source, namely, Seybert.

17.    The Seybert trade dress has acquired secondary meaning and consumers associate the trade dress exclusively with Seybert home décor. The Subject Designs trade dress have acquired secondary meaning based on the evidence of intentional and precise copying by Defendants, Seybert's established place in the home décor market, the lengthy duration of Seybert's substantial and continuous advertisement, sale, and manufacturing of the Subject Designs, the Subject Designs prominent display by various large retailers, magazines, and on social media, and the large number of sales. Seybert is also frequently recognized as a high-end home décor brand and has an extremely well-known presence as such.

18.    The strength and recognition of the Seybert trade dress is evident from the considerable amount of publicity given to the Seybert products, including online from various retailers, discussing the quality and uniqueness of Seybert products.

19.    Seybert has achieved valuable goodwill and secondary meaning in its Subject Design trade dress.

20.    SARO is a home goods retailer which sells its products direct to consumers through its website, https://www.sarostore.com/, and through third-party distributors including Amazon, Overstock, and Wayfair.

21.    Seybert is informed and believes and thereon alleges that following its distribution of the Subject Designs, SARO purchased, distributed, advertised, and/or sold home décor featuring designs which are reproductions of the Subject Designs (hereinafter the "Offending Products") without Seybert's authorization. True and accurate exemplar(s) of the Subject Designs alongside the Offending Products with affiliated URLs are set forth below:

| SUBJECT DESIGNS | OFFENDING PRODUCTS |
|---|---|
| Confetti Placemat<br>Registration No. VAu 1-259-535 | <br>https://www.sarostore.com/p-50506-219-beaded-placemat.aspx |
| <br>Vermicelli Placemat<br>Registration No. VAu 1-356-603 | <br>https://www.sarostore.com/p-51863-9104-beaded-placemat.aspx |

- 6 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Bow Tie Runner
Registration No. VAu 1-316-892



https://www.sarostore.com/p-51680-8142-beaded-christmas-bows-runner.aspx









1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







https://www.sarostore.com/p-52324-nr321-wavy-stacked-napkin-ring.aspx

Flux Napkin Ring
Registration No. VAu 2-068-694



Super Nova Napkin Ring
Registration No. VAu 2-068-694



https://www.sarostore.com/p-52337-nr390-beaded-napkin-ring.aspx

| | |
|---|---|
| <br><br>Pearl Burst Napkin Ring<br>Registration No. VAu 2-068-694 | <br><br>https://www.amazon.com/dp/B076DV2<br>X9X?psc=1&ref=ppx_yo2ov_dt_b_prod<br>uct_details |
| <br><br>Wood Spider Burst Napkin Ring<br>Registration No. VAu 2-068-694 | <br><br>https://www.amazon.com/dp/B08KSKB<br>P3V?psc=1&ref=ppx_yo2ov_dt_b_prod<br>uct_details |

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





https://www.amazon.com/SARO-LIFESTYLE-Flower-Design-Napkin/dp/B0





Constellation Napkin Rings
Registration No. VAu 2-068-694

https://www.overstock.com/Home-Garden/Napkin-Rings-With-Beaded-Flower

- 10 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



| Coral Branch Napkin Ring Registration No. VAu 2-068-694 | Saro "Coral Beaded Napkin Rings" https://www.sarostore.com/p-52306-nr227-beaded-coral-napkin-ring.aspx |

- 11 -

Sea Stone Napkin Ring
Registration No. VAu 1-332-309



https://www.wayfair.com/kitchen-tabletop/pdp/saro-stone-cluster-napkin-rings-thjl5473.html



Pearl Napkin Ring
Registration No. VAu 2-068-694



https://www.overstock.com/Home-Garden/Faux-Pearl-Napkin-Ring-Set-of-4/12425546/product.html

22. Seybert did not manufacture or distribute the Offending Products. Indeed, the Offending Products are of plainly inferior quality, differing size, and include materials that Seybert does not manufacture or distribute.

23. Seybert is informed and thereon alleges that after purchasing the Offending Products from Defendants, Defendants manufactured or caused to be manufactured products infringing Seybert's unique trade dress and Subject Design.

24. Defendants unauthorized use of Seybert's Subject Designs has caused and is likely to continue causing confusion, mistake, and deception as the source or origin of the Offending Products and is likely to falsely suggest sponsorship, connection, or association between Defendants and/or their products.

25. Defendants unauthorized use of Seybert's Subject Design trade dress is likely to cause confusion amongst customers based on the strength and prominence of the trade dress in the home décor market, the nearly identical similarities between the genuine Subject Designs and the Offending Products, the proximity of the products with each other, the similarity of marketing channels used, and the likelihood of expansion. Defendants clearly acted intentionally and precisely in copying the color, size, detail, and shape of the Subject Designs trade dress.

26. Seybert's goodwill among customers is uniquely tied to its Subject Designs and the quality of each. Defendants' copying of Seybert's intellectual property rights not only allows Defendants to trade on the benefits of Seybert's investment, but it also threatens to substantially diminish the goodwill that Seybert has developed with consumers.

## **FIRST CLAIM FOR RELIEF**

(For Copyright Infringement – Against all Defendants, and Each)

27. Plaintiff repeats, re-alleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs.

- 13 -

COMPLAINT

28. Plaintiff alleges that Defendants, and each of them, accessed the Subject Designs by without limitation, viewing, and/or purchasing the Subject Designs.

29. Plaintiff alleges on information and belief that Defendants, and each of them copied, reproduced, displayed, and distributed the Offending Products to consumers.

30. Plaintiff alleges on information and belief that Defendants, and each of them, infringed Plaintiff's copyrights by creating infringing derivative works from the Subject Designs and distributed same to the public.

31. Due to Defendants', and each of their acts of infringement, Plaintiff has suffered general and special damages in an amount to be established at trial.

32. Due to Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Plaintiff's rights in the Subject Designs. As such, Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Plaintiff's rights in the Subject Designs in an amount to be established at trial. Plaintiff further alleges that Defendants have committed copyright infringement with actual knowledge or reckless disregard of Plaintiff's rights such that said acts of copyright infringement were, and continue to be, willful, intentional, and malicious.

### SECOND CLAIM FOR RELIEF

(For Vicarious and/or Contributory Copyright Infringement – Against all Defendants, and Each)

33. Plaintiff repeats, re-alleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs.

34. Plaintiff alleges on information and belief that SARO knowingly induced, participated in, aided and abetted in, and profited from the illegal reproduction and distribution of the Subject Designs as alleged hereinabove. Such conduct included,

- 14 -

without limitation, reproducing, creating derivative works, and distributing the Offending Product for purchase through affiliate and third-party distributors including Amazon, Overstock, and Wayfair.

35. Plaintiff alleges on information and belief that SARO is vicariously liable for the infringement alleged herein because it had the right and ability to supervise the production of the Offending Products and because it had a direct financial interest in the Offending Products.

36. By reason of SARO's acts of contributory and vicarious infringement as alleged above, Plaintiff has suffered general and special damages in an amount to be established at trial.

37. Due to SARO's infringement, it has obtained direct and indirect profits it would not otherwise have realized but for its infringement of Plaintiff's rights in the Subject Designs. As such, Plaintiff is entitled to disgorgement of SARO's profits directly and indirectly attributable to its and its third-party distributors' infringement of Plaintiff's rights in the Subject Designs in an amount to be established at trial.

## THIRD CLAIM FOR RELIEF

(For Trade Dress Infringement, False Designation of Origin, and Unfair Competition (15 U.S.C. § 1125(a)) – Against all Defendants)

38. Plaintiff repeats, re-alleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs.

39. Defendants advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of Offending Products, in direct competition with Plaintiff, constitute common law trade dress infringement, at least because Defendants use of Plaintiff's trade dress and/or colorable imitations thereof is likely to cause consumer confusion as to the origin and/or sponsorship affiliation of its Offending Products, at least by creating the false and misleading impression that its

Offending Products are manufactured by, authorized by, or otherwise associated with Plaintiff.

40. Plaintiff's trade dress is entitled to protection under common law. Plaintiff's trade dress includes unique, distinctive, and non-functional home décor designs.

41. Plaintiff has extensively and continuously promoted and used its trade dress in the United States and New York. Through that extensive and continuous use, Plaintiff's trade dress has become a well-known indicator of the originality and quality of Plaintiff's products.

42. Plaintiff's trade dress has acquired substantial secondary meaning in the home décor marketplace. Moreover, Plaintiff's trade dress acquired this secondary meaning before Defendant's commenced its unlawful use of Plaintiff's trade dress in connection with its Offending Products.

43. Defendants have misappropriated several of Plaintiff's home décor trade dress designs by copying several elements of the Subject Designs trade dress.

44. Defendant's manufacture, promotion, and distribution of Offending Products containing elements that copies a combination of several elements of the Plaintiff's Subject Design trade dress is likely to cause confusion or mistake, or to deceive consumers as to the affiliation, connection, or association of Offending Products with the Seybert brand, or to the origin, sponsorship, or approval by Seybert of the Offending Products.

45. Defendants use of the Subject Designs trade dress without authorization is in furtherance of their willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill and recognition Seybert has established in the trade dress, and sow consumer confusion between the parties and their products.

46. Defendant's use of Plaintiff's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable

COMPLAINT

injury to the goodwill and reputation for quality associated with Plaintiff's trade dress, Plaintiff's products, and Plaintiff.

47. Defendant's manufacture, promotion and distribution of the Offending Products that copy a combination of several elements of the Subject Designs trade dress enables Defendants to benefit unfairly from Plaintiff's reputation and success.

48. Defendants' use of the Subject Designs trade dress without authorization from Seybert is likely to dilute the distinctive quality of the Seybert trade dress, decrease the capacity of that trade dress to identify and distinguish Seybert products and to cause harm to Seybert's business reputation. Defendants' acts complained of herein constitute trade dress dilution in violation of 15 U.S.C. § 1125(c).

49. Defendants use of Plaintiff's trade dress and/or colorable imitations thereof has been intentional, willful and malicious. Defendant's bad faith is evidenced, at least, by Defendants direct copying of several Seybert products and continued disregard for Seybert's rights.

50. Defendants have made and will continue to make, substantial profits and gain from their use of the Subject Design trade dress in the United States, to which they are not entitled in law or equity.

51. Plaintiff is entitled to injunctive relief and recovery of Plaintiff's actual damages, Defendant's profits, punitive damages, costs, and reasonable attorney's fees.

## **PRAYER FOR RELIEF**

52. Wherefore, Plaintiff prays for judgment as follows:

    a. That Defendants—each of them—and their respective agents and servants be enjoined from importing, manufacturing, distributing, offering for sale, selling, or otherwise trafficking in any product that infringes Plaintiff's copyrights in Subject Designs;

COMPLAINT

b. An order preliminarily and permanently enjoining Defendants and their officers, agents, affiliates, employees, and attorneys and all those persons acting or attempting to act in concert or participation with them, from: using any design similarly or likely to cause confusion with the Subject Designs; using any false designation of origin or false description, including the appearance of its product, that can, or is likely to, lead the consuming public, or individual members thereof, to believe that any goods produced, advertised, promoted, marketed, provided, or sold by Defendants are in any manner associated or connected with SEYBERT, or are advertised, promoted, marketed, sold, licensed, sponsored, approved, or authorized by SEYBERT; committing any other unfair business practices directed toward or obtaining for themselves the business and customers of SEYBERT; and committing any other unfair business practices directed toward devaluing or diminishing SEYBERT's brand or business;

c. That Plaintiff be awarded all profits of Defendants, and each of them, plus all losses of Plaintiff, the exact sum to be proven at the time of trial, or, if elected before final judgment, statutory damages as available under the Copyright Act, 17 U.S.C. § 101 et seq.;

d. That Plaintiff be awarded its attorneys' fees as available under the Copyright Act U.S.C. § 101 et seq.;

e. That Plaintiff be awarded all profits of Defendants, and each of them, plus all losses of Plaintiff, plus any other monetary advantage gained by the Defendants, through their infringement, the exact sum to be proven at the time of trial as available under 17 U.S.C. § 504, 15 U.S.C. § 1117, and any other applicable law;

f.  Reasonable funds for corrective advertising;

g.  That Plaintiff be awarded pre-judgment interest as allowed by law;

h.  That Plaintiff be awarded the costs of this action; and

i.  That Plaintiff be awarded such further legal and equitable relief as the Court deems proper.

Plaintiff demands a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38 and the 7th Amendment to the United States Constitution.

Respectfully,

Dated: September 6, 2023          By:    /s/ *Scott Alan Burroughs*
                                         Scott Alan Burroughs, Esq.
                                         Kelsey M. Schultz, Esq.
                                         DONIGER / BURROUGHS
                                         Attorneys for Plaintiff

COMPLAINT